# EXHIBIT A

**12-Person Jury**

FILED
3/3/2021 11:38 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
12431708

FILED DATE: 3/3/2021 11:38 PM    2021L002567

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| DR. PADMA RAO, | ) |
| Plaintiff, | ) ) |
| v. | ) 2021L002567 ) ) |
| JP MORGAN CHASE BANK N.A., JPMORGAN CHASE and CO. (a Delaware Corporation), and KIEFER KRAUSE, | ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Now comes the Plaintiff, Dr. Padma Rao, and complains against defendants JP Morgan Chase Bank N.A. and JPMorgan Chase and Co. (collectively "Chase") and Kiefer Krause ("Krause") as follows:

**Nature of Action**

1. This is an action for defamation, false light invasion of privacy, violation of the Consumer Fraud Act, and public disclosure invasion of privacy by defendants Chase and Krause against Dr. Rao. Dr. Rao is the daughter of her deceased mother whose estate is under administration. Chase through its agent Krause made the false statement to the estate administrator that while the deceased was still alive, Dr. Rao had purportedly used her power of attorney over the deceased's affairs to go to Chase and make Dr. Rao herself the sole designated beneficiary of all the funds in the deceased's bank accounts with Chase. The false, cruel and extremely reckless allegation of Dr. Rao's criminal fraud and financial exploitation against her own elderly mother

1

FILED DATE: 3/3/2021 11:38 PM 2021L002567

was then further publicized in a court filing by the estate administrator repeating this false charge. Defendants' false statement constituted defamation *per se* as well as a false light invasion against Dr. Rao's privacy. Adding further injury, Chase violated the Consumer Fraud Act by providing the administrator with extremely extensive unredacted personal identity information of Dr. Rao, which the administrator also further revealed in its public court filing. Such misconduct of public disclosure of Dr. Rao's identity information was also an illegal invasion of her privacy under Illinois law.

### Facts

2. Plaintiff Dr. Padma Rao is a resident of Evanston in Cook County.

3. Defendant JP Morgan Chase Bank N.A. is a National Bank doing business in Cook County, and defendant JPMorgan Chase and Co. is a Delaware Corporation that controls JP Morgan Chase Bank N.A. and does business in Cook County.

4. Defendant Kiefer Krause is an individual who was an employee of Chase in Cook County at the time of the relevant circumstances herein.

5. Prior to her passing in October 2013, Dr. Rao's mother Basavapunnamma Rao held Chase "Private Client" checking and savings accounts ending in #3464 and #2885.

6. On August 1, 2012, Basavapunnamma Rao personally went to her Chase branch in Evanston and met with her Chase "Private Client" banker Donna Glavan. At this meeting, Basavapunnamma Rao directed Glavan to make Dr.

2

Rao the Payable On Death ("POD") beneficiary for her Chase accounts ending in #3464 and #2885.

7. Following this direction by Basavapunnamma Rao, on that same day of August 1, 2012, Glavan and Chase designated Dr. Rao as the POD beneficiary on accounts #3464 and #2885. The POD designation was entered into a Chase internal electronic document for each of these accounts, and each electronic account document reflected that the POD designations had been made on August 1, 2012, for Chase accounts ending in #3464 and #2885.

8. In October 2013, Basavapunnamma Rao passed away, and pursuant to the POD designation her Chase accounts #3464 and #2885 and the funds therein were tendered to Dr. Rao's control.

9. In 2020, Midland Trust Company ("Midland") was administering the Estate of Basavapunnamma Rao. On February 12, 2020, Midland agent and attorney Michael Wurster wrote an email to defendant Krause at kiefer.s.krause @chase.com to request POD designation information on the Basavapunnamma Rao Chase accounts #3464 and #2885. An agent and attorney for Midland, Mark Singler, was copied on this February 12 correspondence.

10. On February 12, 2020, Krause emailed back to Wurster an automated response that Krause would be out of the Chase office until March 3, 2020, and to contact Chase employee Josie O'Neill for further assistance.

11. On February 25, 2020, Wurster wrote an email to O'Neill requesting information on beneficiary designation for accounts #3464 and #2885.

3

FILED DATE: 3/3/2021 11:38 PM 2021L002567

12. On February 27, 2020 O'Neill wrote an email back to Wurster, and copied Krause and Singler on the correspondence. O'Neill wrote that Singler would have to come to a Chase office personally to get documents on the Chase accounts because Singler was the name on the document appointing Midland as administrator. O'Neill also wrote "I am trying to determine how we can provide you the information you are requesting to receive in writing, as it is only listed on what are considered internal documents."

13. On March 3, 2020, Krause personally met with Singler at a Chase office. At this meeting, Krause tendered to Singler two unredacted documents each titled "Personal Signature Card" for accounts #3464 and #2885 ("Signature Cards"), redacted versions of which have been attached as Exhibits 1 and 2 herein. Krause also tendered to Singler a Power of Attorney ("POA") document dated March 8, 2010, and executed by Basavapunnamma Rao which appointed Dr. Rao as her agent and attorney-in-fact with powers to make financial institution transactions.

14. The Signature Cards were signed by Dr. Rao on June 11, 2013, both on behalf of her mother Basavapunnamma Rao with the POA designation, and in Dr. Rao's own name with the POA designation.

15. The Signature Cards contained preexisting account information for both accounts. Both Signature Cards made the statement at the top of the document "POD Padma Rao", which reflected the preexisting POD designation which Basavapunnamma Rao had made for both accounts on August 1, 2012.

4

16. Additional account information on the Signature Cards is Donna Glavan's name, Chase branch and phone number for her opening the accounts in October 2009.

17. The original unredacted Signature Cards also both contained personal identity information of Dr. Rao, including Dr. Rao's driver's license number, social security number, birthday, Visa card number, and her home address.

18. Dr. Rao completed the Signature Cards on June 11, 2013, so that she would have signatory authority over her mother's accounts to take care of her mother's financial expenses while her mother was completely incapacitated and hospitalized in June 2013. Dr. Rao also tendered to Chase that day of June 11, 2013, the executed POA document to show that Dr. Rao had valid authority to become a signatory on the accounts.

19. Hard copies of the Signature Cards and the POA accompanying them were sent to a Chase department called "Doc Prep" which upon receipt stamped the first page of this document set with the following: "Received by Doc Prep June 14, 2013 AG". Ex. 1.

20. On March 3, 2020, in the meeting with Singler where Krause tendered the Signature Cards and POA to Singler, Krause told Singler that the Signature Cards signed by Dr. Rao were the documents establishing the POD designation on these accounts in favor of Dr. Rao, and that Dr. Rao had used her POA authority to establish this POD personal benefit in her favor on her mother's accounts.

5

21. This Krause statement to Singler (the "POD Statement") -- the Signature Cards signed by Dr. Rao were the documents establishing the POD designation on these accounts in favor of Dr. Rao, and that Dr. Rao had used her POA authority to establish this POD personal benefit in her favor on her mother's accounts – was factually false. The Signature Cards only gave Dr. Rao signatory authority over the accounts and did not establish the account POD designation. The POD Designation stated on the Signature Cards was preexisting account information. The POD Designation had already been established in August 2012 through Basavapunnamma Rao's personal meeting and request to Donna Glavan.

22. In making the POD Statement to Singler, Krause was acting as the agent of Chase and was acting within the scope of his authority of his employer Chase pursuant to his employment.

23. Krause obtained prior approval from the Chase Legal Department to meet with Singler and make the POD Statement to Singler. Krause has specifically written under oath: "On March 3, 2020, after speaking with Singler, reviewing all available information and supporting documentation and obtaining approval from Chase Legal Department, I determined the POD Beneficiary Designation related to BK's Checking Account and BK's Savings Account were established on June 11, 2013 by Padma Rao ("Padma") as the agent of the Power of Attorney for Property."

24. Defendants Krause and Chase were extremely negligent and reckless in making the false POD Statement. First, defendants should have known

6

FILED DATE: 3/3/2021 11:38 PM 2021L002567

Chase's own banking procedures for making a POD designation on Chase accounts, and thus should have known that such POD Designation is not established by a Signature Card. Second, defendants should have consulted the proper Chase internal electronic record document establishing the POD Designation which correctly states the designation was made on August 1, 2012. Third, the Signature Cards documents at issue are titled "Personal Signature Card" instead of "POD Designation", and the Signature Cards do not have any language whatsoever that the signer is now establishing her POD designation through this Signature Card document. Fourth, defendants should have consulted with Chase employee Glavan who would have given the correct POD Designation information both from her general experience as well as her personal knowledge of this Rao transaction, and Glavan's contact information is on the Signature Cards themselves. Anybody at Chase -- including Krause, O'Neill, or those in Chase Legal – could have consulted with Glavan in a ten-minute phone call. Fifth, Chase should have consulted with Glavan instead of Krause because Glavan is a college graduate who has worked at Chase for over 10 years, while Krause had only been at Chase a few years and is not a college graduate. Sixth, Chase employee O'Neill specifically knew and informed Krause that the Signature Cards (which were hard tangible documents) were not the POD designation documents, as O'Neill wrote Krause and Singler "I am trying to determine how we can provide you the information you are requesting to receive in writing, as it is only listed on what are considered internal documents." Nevertheless,

7

FILED DATE: 3/3/2021 11:38 PM 2021L002567

defendants tendered to Singler the Signature Cards -- hard documents in writing -- purporting to support the false POD Statement. Seventh, before the defendants made an extremely serious accusation of criminal fraud by a licensed professional against her own mother, defendants should have been exceedingly cautious and thoroughly investigated the matter.

25. After defendants' false POD Statement to Midland, Midland made a public court filing in the Cook County case of the Estate of Rao, 2013 P 6243 on March 16, 2020. As a direct result of defendants' false POD statement to Midland, Midland made all of the following <u>false</u> public allegations in its court filing:

"the Personal Signature Cards were executed by Padma, on behalf of [the deceased] B.K., as the agent under B.K.'s power of attorney for the property, naming herself as the POD beneficiary";

"As Padma was the agent under the POA, Padma had a fiduciary relationship with B.K., and as such, the establishment of the POD beneficiary designation of the Chase Accounts is presumed to be fraudulent." ;

"The creation of the POD beneficiary designation [by Padma] was purposeful, self-serving, fraudulent, and breach of her fiduciary duty";

"Pursuant to 755 ILCS 5/2-6.2(b), '[Persons who are] liable for financial exploitation shall not receive any [property] by reason of the death of the elderly person'";

"Financial exploitation is defined by Section 2-6.2(a) as '[the taking] or misappropriation of assets of an elderly person or a person with a disability'";

8

FILED DATE: 3/3/2021 11:38 PM 2021L002567

"pursuant to Section 5/2-6.2(a), Padma could be divested of her entire beneficial interest in the Estate";

"MTC [requests direction] as whether MTC should file a petition to divest Padma of the $34,611.66 that she misappropriated as agent under the POA, or whether MTC should file a petition to divest Padma her entire beneficial interest."

26. Midland's use of the false POD statement in its court filing alleging fraud, elder abuse, and criminal violations by Dr. Rao was a direct result of the false POD statement by defendants and reasonably foreseeable by defendants from their communication with Midland's counsel.

27. Defendants' false POD Statement to Midland accused Dr. Rao of criminal fraud, criminal financial exploitation of an elderly person under Section 17-56 of the Illinois Criminal Code, and criminal financial exploitation of a person with a disability under Section 17-56 of the Illinois Criminal Code.

28. On April 16, 2020, Krause met with Singler at a Chase office, and Krause repeated again the false POD Statement to Singler.

29. Dr. Rao suffered great emotional distress from the defamation falsely accusing her of fraud, elder abuse, and financial exploitation against her own incapacitated and dying mother. Such distress includes suffering bouts of despair and severe depression, sometimes to the point where she spend most of the day in bed unable to do anything but cry. The death of her mother was still an open wound to Dr. Rao, but the false public accusations of criminal conduct against her deceased mother felt to Dr. Rao like there was a knife put

9

in this wound and twisted in. Such despair and depression in Dr. Rao also put a severe strain on her personal relationships and friendships.

## COUNT I

### DEFAMATION (against all defendants)

30. The plaintiff repeats and realleges paragraphs 1 through 29 above as though fully set forth herein.

31. The Defendants made a false statement about Dr. Rao in their POD Statement, and defendants made an unprivileged publication and communication of that false statement in their communication to third party Midland.

32. Defendants' false POD Statement about Dr. Rao communicated to a third party caused damage to plaintiff. The POD Statement was defamation *per se* as it imputed the commission of several criminal offenses by Dr. Rao against her own mother involving moral turpitude.

33. Dr. Rao is entitled to damages here for the damage to her reputation as well as for all the emotional distress she has suffered from the defendants' conduct. In addition, defendants' conduct was extraordinary recklessness and grossly negligent, conducting a patently improper and grossly insufficient investigation of their severe false criminal allegation in wanton disregard of the rights and welfare of Dr. Rao, such that punitive damages are appropriate.

WHEREFORE, plaintiff Dr. Rao prays for judgment against defendants for all damages incurred in excess of $1,000,000 each in both compensatory and punitive damages, and any further relief the Court deems fair and just.

## COUNT II

### FALSE LIGHT INVASION OF PRIVACY (against all defendants)

34. The plaintiff repeats and realleges paragraphs 1 through 33 above as though fully set forth herein.

35. Dr. Rao was placed in a false light before the public as a result of the defendants' actions.

36. The false light in which Dr. Rao was placed – that she committed crimes of moral turpitude against her own mother -- would be highly offensive to a reasonable person.

37. The defendants acted with actual malice by acting with reckless disregard for whether the POD Statement was true or false.

38. Dr. Rao was damaged by the Defendants placing her in a false light, including by the emotional distress she has suffered from the defendants' conduct. In addition, defendants' conduct was extraordinary recklessness and grossly negligent, conducting a patently improper and grossly insufficient investigation of their severe false criminal allegation in wanton disregard of the rights and welfare of Dr. Rao, such that punitive damages are appropriate.

WHEREFORE, plaintiff Dr. Rao prays for judgment against defendants for all damages incurred in excess of $1,000,000 each in both compensatory and punitive damages, and any further relief the Court deems fair and just.

## COUNT III

### VIOLATION OF THE CONSUMER FRAUD ACT (against Chase)

39. The plaintiff repeats and realleges paragraphs 1 through 38 above as though fully set forth herein.

40. As stated above, on March 3, 2020, defendants tendered to Midland the unredacted version of the Signature Card documents in Exhibits 1 and 2 which contained extensive personal identity information of Dr. Rao, including Dr. Rao's driver's license number, social security number, birthday, Visa card number, and her home address.

41. Defendants should have known that Signature Card Documents were irrelevant to the establishment of the POD designation, and thus that there was no reason or excuse to ever tender the Signature Cards to Midland.

42. Moreover, even where defendants here chose to tender the irrelevant Signature Card documents to Midland, a redaction of all Dr. Rao's personal identity information on these documents was legally required to protect Dr. Rao. Had such redaction properly occurred, the personal identity information would never have been extensively disclosed to the public in the court filing containing those unredacted Signature Card documents. Chase could have accomplished such redaction on the two pages of documents at issue in under a minute, had Chase not been grossly negligent and chosen otherwise.

43. Dr. Rao suffered great damages from the public disclosure of all her personal identity information. Dr. Rao has to constantly worry about resulting fraud. While Dr. Rao has frozen her credit report as a prevention measure, this also prevents Dr. Rao from obtaining a loan or even a credit card while the freeze remains in place. Moreover, Dr. Rao's licensure board has told her that there

FILED DATE: 3/3/2021 11:38 PM    2021L002567

can never be any reliable authentication of any communications or transactions with Dr. Rao because of Chase's disclosure of all of Dr. Rao's 'security information'. In addition, Dr. Rao also has an active Order of Protection ("OP") in place against her sister Anita Rao, and Dr. Rao is extremely concerned that Anita will use Dr. Rao's identity information to defraud or cause her great difficulties. Dr. Rao had even went to Donna Glavan at Chase in 2019 to ask Chase to record the OP on everything associated with Dr. Rao's own accounts at Chase, to ensure that Anita would never be given any access to any of Dr. Rao's information or assets. Donna Glavan told Dr. Rao that she scanned the OP into the bank's records and also assured Dr. Rao that there was "no way" that Anita could "ever" get access to Dr. Rao's information or assets from Chase. But now Chase has publicly disclosed all this information in a court filing that was also specifically sent to Anita's agent, as Anita is a party in the Estate matter, causing further stress and emotional anguish to Dr. Rao that she expressly took steps to avoid. Finally, Dr. Rao has been forced into the hassle of requesting cashier's checks to pay for all her bills, because the exposure of any of Dr. Rao's bank account information could lead to catastrophic fraud where the rest of Dr. Rao personal identity information has already been exposed due to Chase's conduct.

44. Under section 5 of the Personal Information Protection Act (815 ILCS 530/5), Chase is a data collector as a financial institution that handles and collects nonpublic personal information.

13

45. Section 45 of the Personal Information Protection Act (815 ILCS 530/45) required Chase to implement and maintain reasonable security measures to protect personal information of Dr. Rao from unauthorized use or disclosure.

46. Chase violated Section 45 of the Personal Information Protection Act in two ways: 1) tendering Dr. Rao's personal information to a third party without the reasonable security measure of redaction of such personal information; and 2) unreasonably tendering Dr. Rao's personal information to a third party in a document which was wholly unrelated to the third-party information request in the first place.

47. Chase's violation of Section 45 of the Personal Information Protection Act also constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act pursuant to Section 20 of the Personal Information Protection Act (815 ILCS 530/20).

48. Dr. Rao has been greatly damaged by Chase's violation of the Consumer Fraud Act as shown above.

49. Punitive damages are appropriate for the Bank's extreme and gross negligence here in wanton disregard of the rights and welfare of Dr. Rao. Reimbursement of attorney's fees and costs pursuant to section 10(c) of the Consumer Fraud Act (815 ILCS 505/10a(c)) are also appropriate.

WHEREFORE, plaintiff Dr. Rao prays for judgment against Chase for all compensatory damages incurred and additional punitive damages, reimbursement of fees and costs pursuant to section 10(c) of the Consumer Fraud Act, and any further relief the Court deems fair and just.

FILED DATE: 3/3/2021 11:38 PM 2021L002567

## COUNT IV

### PUBLIC DISCLOSURE INVASION OF PRIVACY (against all defendants)

50. The plaintiff repeats and realleges paragraphs 1 through 49 above as though fully set forth herein.

51. Publicity was given to the disclosure of Dr. Rao's private facts: Dr. Rao's driver's license number, social security number, birthday, and Visa card number.

52. These facts were private, and not public, facts,

53. The making of all these facts public was such as to be highly offensive to a reasonable person.

54. Dr. Rao has been greatly damaged by defendants' violation of her privacy with this public disclosure as shown above.

55. Punitive damages are appropriate for the defendants' extreme and gross negligence here in its public disclosure in wanton disregard of the rights and welfare of Dr. Rao.

WHEREFORE, plaintiff Dr. Rao prays for judgment against defendants for all compensatory damages incurred and additional punitive damages, and for any further relief the Court deems fair and just.


PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS

FILED DATE: 3/3/2021 11:38 PM 2021L002567

Respectfully submitted,

By: /s/ Michael Steigmann

Michael Steigmann
180 N. LaSalle St., Suite 3700
Chicago, Illinois 60601
(312) 833-5945
#43711

### VERIFICATION OF DAMAGES SOUGHT

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned verifies that the damages sought herein exceed $50,000.


_/s/ Michael Steigmann____