IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dr. PADMA RAO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21 C 1361 |
| v. ) | |
| ) | Judge John Z. Lee |
| JPMORGAN CHASE BANK, N.A., ) | |
| JPMORGAN CHASE and CO. ) | |
| (a Delaware Corporation), and ) | |
| KIEFER KRAUSE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of a dispute surrounding the estate of Basavapunnamma K. Rao ("BK Rao"), which Midland Trust Company ("Midland") administers. Plaintiff Dr. Padma Rao is BK Rao's daughter. In this lawsuit, Rao alleges that Defendants JP Morgan Chase Bank N.A. ("Chase") and one of its employees, Kiefer Krause ("Krause"), made a statement to Midland wrongfully accusing her of using her power of attorney ("POA") to make herself the payable-on-death ("POD") beneficiary of BK Rao's Chase bank accounts.

Dr. Rao sued Chase and Krause (collectively "Defendants") in Illinois state court, asserting claims of defamation *per se*, false light invasion of privacy, and public disclosure of private facts. She also claims that Chase's and Krause's conduct constitutes an "unfair practice" under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill Comp. Stat. 505/1 *et seq.*, because it violates the Personal Information Protection Act ("PIPA"), 815 Ill. Comp. Stat. 530/1 *et seq.*

Defendants removed the case to this Court and filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted in part and denied in part.[1]

## I. Factual Background[2]

BK Rao executed a POA appointing Dr. Rao as her agent on March 8, 2010. Compl. ¶ 13, ECF No. 1-1; *see* Mem. Supp. Defs.' Mot. Dismiss ("Defs.' Mem."), Ex. E, BK Rao POA, ECF No. 14-1. Nearly two years later, on August 1, 2012, BK Rao directed Donna Glavan, a Chase Private Client Banker, to designate Dr. Rao as her POD beneficiary for her Chase bank accounts. Compl. ¶ 6. The document designating Dr. Rao as BK Rao's POD beneficiary (the "POD Designation") was recorded in Chase's internal document system. *Id.* ¶ 7. Roughly ten months later, on June 11, 2013, Dr. Rao used her POA authority to complete two Signature Cards providing her with control of BK Rao's Chase bank accounts so that she could pay her mother's financial expenses while BK Rao was hospitalized with a serious illness. *Id.* ¶¶ 14–18, *see* Defs.' Mem., Ex H, Signature Card x3464, ECF No. 14-1; Defs.' Mem., Ex. I, Signature Card x2885, ECF No. 14-1. BK Rao died a few months later, and ownership

---

[1] Dr. Rao also names Chase's parent company, JP Morgan Chase & Co., as a defendant in her complaint. Compl. ¶ 6. However, she has not explained in her pleadings why JP Morgan Chase & Co. should be liable for its subsidiary's alleged defamation—and, given that JP Morgan Chase & Co. did not "directly supervise[] the conduct of [the] specific transaction" at issue here, there would be little room for her to do so. *Grabianski v. Bally Total Fitness Corp.*, 169 F. Supp. 3d 785, 792 (N.D. Ill. 2015) (quoting *Esmark v. N.L.R.B.*, 887 F.2d 739, 755–56 (7th Cir. 1989)). Thus, all claims against JP Morgan Chase & Co. are dismissed.

[2] The following well-pleaded factual allegations are accepted as true for purposes of the motion to dismiss. *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016).

of her Chase bank accounts was transferred to Dr. Rao. Compl. ¶ 8. Sometime thereafter, Midland was appointed administrator of BK Rao's estate. *Id.* ¶ 9.

About seven years after BK Rao's death, in February 2020, Michael Wurster, an attorney representing Midland, emailed Krause to request information regarding the designation of a beneficiary for BK Rao's Chase bank accounts. *Id.* Krause's colleague at Chase, Josie O'Neill, told Wurster that another attorney at Wurster's firm, Michael Singler, would have to come to a Chase branch to obtain the documents Wurster had requested, since Singler was the attorney named on the instrument appointing Midland as the estate's administrator. *Id.* ¶ 12.

On March 3, 2020, Krause met with Singler and gave Singler copies of the Signature Cards and the POA appointing Dr. Rao as BK Rao's agent. *Id.* ¶ 13. In advance of the meeting, Krause reviewed the documents related to BK Rao's Chase bank accounts, but he did not discover the August 1 POD Designation and did not contact Glavan to confirm the date on which Dr. Rao was named BK Rao's POD beneficiary. *Id.* ¶ 24.

Krause told Singler at the March 3 meeting "that the Signature Cards . . . were the documents that had established the POD designation on those accounts in favor of Dr. Rao, and that Dr. Rao had used her POA authority to establish this POD personal benefit in her favor on her mother's accounts." *Id.* ¶ 20. But this statement was inaccurate: BK Rao had designated Dr. Rao as POD beneficiary in August 2012, nearly a year before Dr. Rao had executed the Signature Cards in June 2013. *Id.* ¶¶ 6, 14.

3

Based on Krause's statement, Midland—convinced Dr. Rao had wrongfully used her POA authority to designate herself as POD beneficiary—submitted a filing in BK Rao's probate case on March 16, 2020 that contained numerous allegations of misconduct against Dr. Rao. *Id.* ¶ 25. The filing repeated Krause's assertion that Dr. Rao had designated herself as POD beneficiary using her POA authority. *Id.* Midland also contended that Dr. Rao's alleged POD designation was "purposeful, self-serving, fraudulent, and [a] breach of her fiduciary duty." *Id.* (quoting *Estate of Rao*, 2013 P 6243 (Cir. Ct. Cook Cnty. Mar. 16, 2020)). The filing also accused Dr. Rao of fraud and financial exploitation of an elderly person and requested the probate court's guidance on whether to file a petition to divest Dr. Rao of the money she had received from the estate. *Id.*

Dr. Rao filed a complaint in the Circuit Court of Cook County on March 3, 2021 against Chase and Krause, asserting that the Krause's statement constituted defamation *per se*, false light invasion of privacy, public disclosure of private facts, and an "unfair practice" under the ICFA due to a purported violation of the PIPA. *See id.* ¶¶ 1, 47. Chase and Krause timely removed the case to this Court, *see* ECF No. 1, and filed the present motion. *See* ECF No. 13.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

When considering a motion to dismiss, courts accept "all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

### III.  Analysis

#### A.  Defamation *Per Se*

Dr. Rao first claims that Krause's statement constitutes defamation *per se* because it "imputed the commission of several criminal offenses" by Dr. Rao. Compl. ¶ 32. Under Illinois law, a statement is defamatory if it "tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) (quoting *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006)). To state a claim for defamation, a plaintiff typically must plead facts showing that: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an

unprivileged publication of the statement; and (3) the statement caused the plaintiff damages. *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 831 (7th Cir. 2019). But certain categories of statements constitute defamation *per se*, meaning that reputational harm is presumed, and the plaintiff does not have to plead damages. *See Huon*, 841 F.3d at 738.

Dr. Rao alleges that Krause's statement falls under one of these categories, as a "statement[] imputing the commission of a crime." *Id.* (quoting *Tuite*, 866 N.E.2d at 121). To be actionable as defamation *per se* under this category, a statement must directly or expressly accuse the plaintiff of a specific crime. *See id.* The statement need not be made with the specificity of an indictment, *see Kapotas v. Better Gov't Ass'n*, 30 N.E.2d 572, 590 (Ill. App. Ct. 2015), but it must not be "reasonably capable of an innocent construction." *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 737 (N.D. Ill. 2020) (quoting *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009)). Additionally, it is insufficient to state that the plaintiff is associated with or is being investigated for a crime—the defendant must indicate that the plaintiff *committed* the offense. *See Kapotas*, 30 N.E.2d at 590 (requiring that the statement contain "evidence of guilt"). Chase and Krause challenge Dr. Rao's defamation *per se* claim in three ways.

**1. Imputation of Criminal Conduct**

First, Defendants maintain that the statement at issue does not impute the commission of a crime, because Krause did not explicitly allege that Dr. Rao is guilty of fraud or financial exploitation of an elderly person or a person with a disability. But a statement does not need to state in so many words that the plaintiff is guilty

6

under a specific criminal statute in order to impute that the plaintiff committed a crime.

*Osundairo* is illustrative. There, plaintiffs alleged that defendants had made several defamatory statements in media interviews suggesting that plaintiffs had battered defendants' client. 447 F. Supp. 3d 727, 734. Specifically, a reporter asked a defendant how plaintiffs could have been the perpetrators given that the attacker reportedly had "light skin" and the plaintiffs were Black. In response, the defendant suggested that plaintiffs had disguised themselves in "whiteface." *Id.* at 739. According to the defendant, that statement could not constitute defamation *per se*, because it did not explicitly accuse the plaintiffs of battery. *See id.* However, the court rejected this argument, holding that "[a]lthough [the defendant] did not specifically say the words 'battery' or 'attack,'" plaintiffs' claim survived because it alleged facts implying that plaintiffs were the ones who had attacked defendants' client. *Id.*

Defendants' argument that Krause's statement cannot be defamation *per se* because it did not "mention[]" a crime, Defs.' Mem. at 8, fails for the same reason. A breach of a fiduciary relationship with an elderly person or a person with a disability in order to obtain control over that person's assets is a felony in Illinois. *See* 720 Ill. Comp. Stat. 5/17-56(b)–(c) ("The illegal use of the assets or resources of an elderly person or a person with a disability includes, but is not limited to, the misappropriation of those assets or resources by . . . breach of a fiduciary relationship." *Id.* § 5/17-56(c)); *People v. Bailey*, 948 N.E.2d 690, 695–96 (Ill. App. Ct.

7

2011). Although Krause did not use the words "fraud" or "exploitation," his statement asserted facts that, if true, would show that Dr. Rao had committed those crimes. *See Bailey*, 948 N.E.2d at 696 (affirming conviction of financial exploitation for woman who had abused a POA to obtain an elderly woman's assets). This is enough to meet the pleading standard for defamation *per se*.

### 2. Innocent Construction Rule

Second, Defendants argue that Krause's statement cannot be defamation *per se* because it is "capable of innocent construction." *Huon*, 841 F.3d at 738 (quoting *Green v. Rogers*, 917 N.E.2d 450, 463 (Ill. 2009)). The "innocent construction rule" holds that a statement is not defamatory *per se* if its "natural and obvious meaning . . . may reasonably be innocently interpreted." *Chapski v. Copley Press*, 442 N.E.2d 195, 199 (Ill. 1982). To this end, Defendants contend that the statement "merely conveyed Krause's understanding of Dr. Rao's beneficiary status." Defs.' Mem. at 9. However, taking all facts in Dr. Rao's favor, Krause's "understanding" was that Dr. Rao had designated herself as POD beneficiary while acting as BK Rao's agent—which is indictable as fraud and criminal exploitation. *See* 720 Ill Comp. Stat. 5/17-56; *see also Tuite*, 866 N.E.2d at 123 (courts must not "strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them nonlibellous" (quoting *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1217 (Ill. 1996))). Thus, the innocent construction rule is inapplicable here.

### 3. Qualified Privilege

Defendants lastly contend that the statement in question is not actionable as defamation because it is subject to a qualified privilege. A qualified privilege may exist when the alleged defamation involves the protected interests of the person who publishes the statement or of the person to whom the statement is published, or when the defamatory statement implicates a legitimate public interest. *See Tamburo v. Dworkin*, 974 F. Supp. 2d 1199, 1214 (N.D. Ill. 2013). A statement that is subject to a qualified privilege is still actionable as defamation if the privilege has been abused—a finding that requires the plaintiff to show that "the defendant either intentionally published the material while knowing it was false, or displayed a reckless disregard as to the matter's falseness." *Giant Screen Sports v. Can. Imperial Bank of Com.*, 553 F.3d 527, 536 (7th Cir. 2009) (citing *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 135 (Ill. 1993)). Furthermore, "whether a qualified privilege exists is a question of law for the court," *Tamburo*, 974 F. Supp. 2d at 1214, while the question of whether an existing privilege has been abused is usually a fact question for the jury. *Giant Screen Sports*, 553 F.3d at 536.

Dr. Rao does not appear to contest that a qualified privilege applies here. *See* Pl.'s Resp. Opp'n Mot. Dismiss ("Pl.'s Resp.") at 11–12. And, indeed, Illinois law establishes a qualified privilege for "statements made within a legitimate business context." *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 727 (7th Cir. 2004) (alteration omitted) (quoting *Larson v. Decatur Mem'l Hosp.*, 602 N.E.2d 864, 867 (Ill. App. Ct. 1992)). This rule protects a statement made in the course of business when "the defendant makes it (1) in good faith; (2) with an interest or duty

9

to be upheld; (3) limited in scope to that purpose; (4) on a proper occasion; and (5) published in a proper manner only to proper parties." *Id.* (quoting *Larson*, 602 N.E.2d at 867). Dr. Rao does not contest that a qualified privilege applies here, and the Court sees no ground for her to do so.

That said, Dr Rao contends that Defendants abused their qualified privilege, because Krause made the statement with "reckless disregard" for its truth. *Giant Screen Sports*, 553 F.3d at 536; *see* Compl. ¶¶ 24, 33. Although the question of whether a defendant abused a qualified privilege is typically a fact question, *see Giant Screen Sports*, 553 F.3d at 536, "[a] court may determine that as a matter of law insufficient facts are alleged [in the complaint] . . . to show an abuse of the applicable qualified privilege." *Tamburo*, 974 F. Supp. 2d at 1215 (quoting *Huon v. Beatty*, No. 1–09–2234, 2011 WL 91717454, at *6 (Ill. App. Ct. Mar. 25, 2011)).

The Court must therefore assess whether the complaint alleges sufficient facts to make it plausible that Defendants acted with reckless disregard in making the statement in question. In this context, "reckless disregard" may consist of "[a] reckless act which shows a disregard for the defamed party's rights," including "failure to properly investigate the truth of the matter." *Kuwik*, 619 N.E.2d at 136.[3]

---

[3] Defendants argue that a failure to investigate does not suffice to show reckless disregard unless the defendant "seriously doubt[ed] the truth of their assertions." Defs.' Mem. at 11 (quoting *Hardiman v. Aslam*, 125 N.E.3d 1185, 1189 (Ill. App. Ct. 2019)). But Defendants' support for this proposition comes from an appeals court case interpreting "reckless disregard" in the context of establishing "actual malice" for defamatory statements about public figures. *Hardiman*, 125 N.E.3d at 1189. More on point is the Illinois Supreme Court's decision in *Kuwik*, which considered "reckless disregard" in the context of abusing a qualified privilege by failing to adequately investigate. 619 N.E.2d at 136.

When the factual allegations in the complaint are construed in the light most favorable to Dr. Rao, the Court finds that it is plausible that Krause's statement was made with "reckless disregard." According to Dr. Rao, the August 1 POD Designation, which would have disproved Krause's hasty conclusion, was recorded in Chase's internal document system. Compl. ¶ 7. She further asserts that Chase's procedures would not have allowed the designation of a POD beneficiary through a Signature Card. *Id.* ¶ 24. These factual contentions, while not conclusive, at least make it plausible that Defendants' failure to discover the POD Designation before making the statement to Midland displayed a reckless disregard for Dr. Rao's rights.[4] *Cf. Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 410 (2d Cir. 2000) ("At this nascent stage of the litigation, plaintiff's allegation that Nationwide failed to check its own records . . . permits a sufficient inference that Nationwide abused its qualified privilege."). Dismissal of Dr. Rao's defamation *per se* claim is not warranted at this nascent stage of the case.

---

[4] Defendants also argue that Dr. Rao has pleaded herself out of court by quoting from Krause's affidavit, in which Krause describes how he "review[ed] all available information and supporting documentation and obtain[ed] approval from Chase Legal Department" before concluding that Dr. Rao had established herself as POD beneficiary using the Signature Cards. Compl. ¶ 23 (quoting Krause Aff. ¶ 9, ECF No. 14-1); *see* Defs.' Mem. at 11–12 & 11 n.3 ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the Complaint, or if they are central to a plaintiff's claims," *id.* at 11 n.3 (quoting *McCready v. EBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006))). But the affidavit is not central to Dr. Rao's claims—indeed, she only quotes the affidavit once, and she could have made the exact same claims without referencing it. It is not similar to, for example, a contract in a breach of contract case. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("[T]his is a narrow exception aimed at cases interpreting, for example, a contract."). Thus, the Krause Affidavit does not fall within the exception outlined in *McCready*.

11

## B. False Light Invasion of Privacy

Dr. Rao next claims that the POD Statement comprises false light invasion of privacy. A false light claim under Illinois law requires the plaintiff to show that: "(1) he was placed in a false light before the public as a result of the Defendants' actions, (2) that false light would be highly offensive to a reasonable person, and (3) Defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 837 (N.D. Ill. 2015) (alteration and internal quotation marks omitted) (quoting *Kirchner v. Greene*, 691 N.E.2d 107, 115–16 (Ill. App. Ct. 1998)). As the Supreme Court of Illinois has emphasized, "the heart of this tort lies in the publicity." *Lovgren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989). Consequently, a statement typically cannot be the basis for a false light claim unless it is "communicat[ed] . . . to the public at large, or . . . substantially certain to become one of public knowledge." *Frobose v. Am. Sav. and Loan Ass'n of Danville*, 152 F.3d 602, 617–18 (7th Cir. 1998) (quoting RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a, at 384 (AM. L. INST. 1977)).

It is uncontroverted that Defendants only made the POD Statement to one person—Singler, the legal representative of Midland. Nevertheless, Dr. Rao argues that Illinois's "special relationship exception" saves her claim. Under this rule, the publicity requirement of a false light claim may be satisfied by disclosure of the false and highly offensive information to a person or group of persons who have a special relationship with the plaintiff. *Poulos v. Lutheran Soc. Servs. of Ill., Inc.*, 728 N.E.2d

12

547, 555–56 (Ill. App. Ct. 2000). Dr. Rao maintains that her positions as heir to her mother's estate and her agent establishes just such a special relationship between Dr. Rao and Midland.

Dr. Rao's argument stretches the definition of "special relationship" too far. The scope of the special relationship exception has not yet been crystallized in the Illinois state courts, but the import of the case law is that the plaintiff must have an interpersonal relationship with the party to whom the offensive falsehood is disclosed. Thus, persons who are covered under the exception include coworkers, club or church members, family, or neighbors. *See, e.g.*, *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 841 (N.D. Ill. 2009). The exception does not include distant business associates, with whom the plaintiff does not have frequent contact. *See id.* On the face of the complaint, Dr. Rao's relationship with Midland appears more like a business acquaintance than a coworker or a family member. Thus, the Court concludes that the special relationship exception does not apply.[5]

For these reasons, Defendants' request to dismiss Dr. Rao's false light claim is granted.

---

[5] Dr. Rao's special relationship argument also fails because the Seventh Circuit has refused to apply the special relationship exception to cases where the party to whom the information was disclosed would, "by virtue of their position[] . . . have a natural interest in, if not a responsibility to know about, the matters communicated." *Frobose*, 152 F.3d at 618; *see Ludlow*, 79 F. Supp. 3d at 844 (applying *Frobose* to reject false light claim by professor against student for reporting sexual harassment allegations against him to university's general counsel because general counsel's job involved managing legal claims against university employees). Here, Dr. Rao does not dispute that Midland, as the administrator of BK Rao's estate, had a natural interest in documents and information related to the estate.

## C. Public Disclosure of Private Facts

Dr. Rao's last common law claim centers on Krause's disclosure of Dr. Rao's personal information to Midland. As the name suggests, a claim based on "public disclosure of private facts," like false light invasion of privacy, requires the plaintiff to show that the statement was made "before the public." *Poulos*, 728 F. N.E.2d at 555; *see Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 838 (7th Cir. 2005). Illinois law treats publicity for purposes of a false light claim and publicity for purposes of a public disclosure of private facts claim in the same way. *See, e.g.*, *Chisholm v. Foothill Cap. Corp.*, 940 F. Supp. 1273, 1285 n.6 (N.D. Ill. 1996); *Poulos*, 728 N.E.2d at 555 (interpreting the publicity requirement for a false light claim with reference to public disclosure of private facts cases); *see also* Pls.' Resp. at 15 (asserting that "under *Poulos* the same analysis applies" to the publicity requirement for both false light and public disclosure of private facts). Because Dr. Rao fails to satisfy the publicity requirement for her false light claim, her claim for public disclosure of private facts claim also fails.

## D. ICFA/PIPA claim

Finally, Dr. Rao asserts that Chase violated the ICFA by violating section 45 of the PIPA. *See* 815 Ill. Comp. Stat. 530/20. ("A violation of [the PIPA] constitutes an unlawful practice under [the ICFA]."). Section 45 of the PIPA states, in relevant part:

> A data collector that owns or licenses, or maintains or stores but does not own or license, records that contain personal information concerning an Illinois resident shall implement and maintain reasonable security

14

> measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure.

*Id.* § 530/45(a). A "data collector" includes a "financial institution[] . . . that, for any purpose, handles, collects, disseminates, or otherwise deals with nonpublic personal information." *Id.* § 530/5. Finally, the PIPA defines "personal information" to include:

> (1) an individual's first name or first initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted or are encrypted or redacted but the keys to unencrypt or unredact or otherwise read the name or data elements have been acquired without authorization through the breach of security:
>
>     (A) Social Security number.
>
>     (B) Driver's license number or State identification card number.
>
>     (C) Account number or credit or debit card number, or an account number or credit card number in combination with any required security code, access code, or password that would permit access to an individual's financial account.
>
>     (D) Medical information.
>
>     (E) Health insurance information.
>
>     (F) Unique biometric data generated from measurements or technical analysis of human body characteristics used by the owner or licensee to authenticate an individual, such as a fingerprint, retina or iris image, or other unique physical representation or digital representation of biometric data.

*Id.* § 530/5(1).

Here, Dr. Rao claims that Chase violated section 45 of the PIPA by failing to redact Dr. Rao's personal information on the Signature Cards before tendering them to Midland. She also alleges that Chase violated the PIPA by providing documents

15

to Midland containing her personal information, when those documents were "wholly unrelated to" the information that Midland requested. Compl. ¶ 46.

Chase does not dispute that it falls within the PIPA's definition of a "data collector," or that the information on the Signature Cards constitutes "personal information." However, Chase maintains that its tender of her personal information to Midland was not "unauthorized," because Midland was entitled to access all of the information relevant to BK Rao's estate's Chase bank accounts. Dr. Rao, citing Illinois's Trust and Payable on Death Accounts Act, 205 Ill. Comp. Stat. 625/1 *et seq.*, rejoins that, because Dr. Rao became the owner of the accounts following BK Rao's death, Midland had no right to access her information without her consent.

As to this point, Dr. Rao is incorrect. The fact that she became the owner of the POD accounts upon BK Rao's death does not mean that Midland's authorization to review records related to the POD accounts was revoked. To the contrary, under Illinois law, the administrator of an estate, like Midland, acts as an agent of the probate court, which has *in rem* jurisdiction over all of the decedent's assets until the estate is completely settled. *See In re Estate of Zagaria*, 997 N.E.2d 913, 921–22 (Ill. App. Ct. 2013); *see generally* Illinois Probate Act of 1975, 755 Ill. Comp. Stat. 5/1 *et seq.* It is implausible that the state legislature would have regarded access by administrators of a decedent's estate to the decedent's financial records to comprise "unauthorized access" under the PIPA. *Cf.* 530 Ill. Comp. Stat. 530/5 (excepting good-faith access to personal information "for a legitimate purpose").

16

What is more, Dr. Rao pleads her claim under the PIPA's data security provision, which was intended to provide remedies for large-scale data breaches, not individualized instances of unauthorized access to unredacted personal information. *See, e.g.*, H.R. Tr. 99-88, Reg. Sess., (Ill. 2015) (statement of Rep. Williams) (referencing the Vtech data breach[6] in providing the rationale for adding the data security provision to the PIPA); *see also Archey v. Osmose Util. Servs., Inc.*, No. 20-cv-05247, 2021 WL 3361756, at *1 (N.D. Ill. Aug. 3, 2021) (addressing PIPA § 45 claims arising out of "a cyberattack against [Defendant's] computer systems containing the personal information of current and former employees."). Accordingly, Dr. Rao's ICFA claim is dismissed.

### E. Krause's Personal Liability

The final issue before the Court is whether Krause is a proper defendant in his personal capacity. Defendants argue that, because Dr. Rao does not identify an independent duty that Krause owed Dr. Rao (*i.e.*, a duty separate from his duties as an agent of Chase), Krause cannot be personally liable for Dr. Rao's alleged injuries. Because only Dr. Rao's defamation *per se* claim survives, the Court limits its inquiry to whether Krause can be personally liable for defamation *per se*.

Defendants cite *Stein v. Rio Parismina Lodge*, 695 N.E.2d 518 (Ill. App. Ct. 1998) for the proposition that, under *respondeat superior*, an agent or employee cannot be liable for the torts of her principal or employer. *Id.* at 525. According to

---

[6] *See generally In re VTech Data Breach Litig.*, No. 15 CV 10889, 2018 WL 1863953 (N.D. Ill. Apr. 18, 2018).

17

Defendants, Dr. Rao's claims against Krause fail, because she attempts to hold Krause liable under *respondeat superior* for the acts of his employer.

Defendants are correct on the law, but they misread Dr. Rao's complaint. Dr. Rao never pleads that Krause is liable for making the statement under the doctrine of *respondeat superior*. Instead, Dr. Rao alleges that Krause was acting within the scope of his employment with Chase in order to establish that Chase is liable for Krause's actions. *See* Compl. ¶¶ 22–23. And Illinois defamation law allows employees to be personally liable for defamatory statements made within the scope of their employment as a form of direct liability. *See Chisholm v. Foothill Cap. Corp.*, 3 F. Supp. 3d 925, 938 (N.D. Ill. 1998) ("A corporate defendant is *jointly and severally liable for defamatory statements actionable against its employee* when the employee is acting within the scope of his employment." (emphasis added)); *Ciolino v. Simon*, ___ N.E.3d ___, 2021 WL 1031371, at *3 (Ill. Mar. 18, 2021) ("[A]ll persons who cause or participate in the publication of [defamatory] matters are responsible for such publication." (second alteration in original) (quoting *Van Horne v. Muller*, 705 N.E.2d 898, 903 (Ill. 1998))). Thus, Krause is a proper defendant as to Dr. Rao's defamation *per se* claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted as to Dr. Rao's false light invasion of privacy, public disclosure of private facts, and ICFA/PIPA claims.  The motion is denied as to her defamation *per se* claim, which may proceed against both Chase and Krause in his personal capacity.

**IT IS SO ORDERED.**          ENTERED:  **3/22/22**

*[signature]*

                                                   **John Z. Lee**
                                                   **United States District Judge**