UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PADMA RAO,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK N.A., et al.,<br><br>Defendants. | Case No. 21-CV-1361<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Plaintiff Padma Rao ("Plaintiff") sues JPMorgan Chase Bank ("Chase") and Chase employee Keifer Krause ("Krause") (collectively "Defendants") on one count of defamation *per se*.[1] [1]. Defendants move now for summary judgment. [62]. For the reasons explained below, this Court grants Defendants' motion.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made,

---

[1] Plaintiff filed a complaint with four counts, but this Court previously dismissed Plaintiff's false light invasion of privacy, public disclosure of facts, and ICFA/PIPA claims. [28]; [29].

1

the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND

The Court takes the following background facts from Defendants' statements of facts [63], Plaintiff's response to Defendants' statements of facts [69], Plaintiff's statement of additional facts [68], and Defendants' response to Plaintiff's statement of additional facts [71].[2]

---

[2] The Court accepts Plaintiff's statement of additional facts where appropriate. It is well settled that courts are entitled to strict compliance with Local Rule 56.1. *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (upholding the district court's discretion to require strict compliance with LR 56.1); *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414-415 (7th Cir. 2019) (citation omitted) (same). The Rule requires parties to include only "material facts" that are supported by "specific evidentiary material" and instructs

2

Plaintiff initiated this action in state court on March 3, 2021. [63] ¶ 1. Defendant timely removed this action to federal court. *Id.* ¶ 2. On April 22, 2021, Defendants moved to dismiss the complaint. *Id.* ¶ 2; [13]. In its ruling, the Court dismissed several of the counts alleged after finding that "[P]laintiff does not contest that a qualified privilege applies here, and the Court sees no ground for her to do so", but held that "[d]ismissal of Plaintiff's defamation *per se* claim [wa]s not warranted at this nascent stage of the case". [29] at 9.

Plaintiff is the daughter of her deceased mother whose estate is under administration. [63] ¶ 8. Plaintiff's mother passed in October 2013. *Id.* ¶ 9. Plaintiff's counsel in this action, Michael Steigmann, also represents Plaintiff in connection with the Cook County, Illinois probate case involving her deceased mother's estate, *In re Estate of Basavapunnamma K. Rao*, No. 2013-P-006243 (Cook Cty, Ill.). *Id.* ¶ 10. Prior to her passing, Plaintiff's mother Basavapunnamma Rao ("B.K. Rao") held Chase Private Client checking and savings accounts ending in #3464 and #2885. *Id.*

---

parties that additional facts should not include "legal argument". LOCAL RULE 56.1(D)(1)-(4). Double hearsay statements which lack foundation are not admissible evidence. *E.g.* (relying on Plaintiff's reporting her conversation with Ms. Donna Galvan) [68-2]; *see Flanagan v. Office of Chief Judge of Circuit Court of Cook County, Illinois*, 893 F.3d 372, 375 (7th Cir. 2018) (affirming the district court's exclusion of double hearsay on summary judgment); *see also Jackson v. City of Peoria*, 825 F.3d 328, 330 (7th Cir. 2016) (affirming the district court's grant of summary judgment and finding plaintiff's affidavit contained double hearsay and was inadmissible). The Court thus disregards additional statements that rely on double hearsay. The Court similarly disregards evidentiary support that relies on the Plaintiff's complaint, since the nonmoving party "must go beyond the pleadings … [and] designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* FED. R. CIV. P. 56(C)(1)(A). "Since an unverified complaint is a pleading, citations to the complaint do little, if anything, to show the absence of any genuine issue of material fact." *Gross v. Peoples Gas Light & Coke Co.*, 634 F. Supp. 3d 464, 476 (N.D. Ill. 2022) (quoting *Baldonado v. Wyeth*, 2012 WL 729228, at *2 (N.D. Ill. Mar. 6, 2012). *See e.g.*, [70] at 1-4, 13-15.

¶ 12. On November 25, 2012, the probate court appointed Plaintiff as the Independent Administrator of her estate in the probate action. *Id.* ¶ 13. On or about December 19, 2018, the probate court removed Plaintiff as the administrator and appointed Midland Trust Company ("Midland") as the Successor Supervised Administrator. *Id.* ¶ 14. After Midland's appointment, the probate court ordered Plaintiff to provide an accounting of the estate assets. *Id.* ¶ 15. On October 30, 2019, the probate court ordered Plaintiff to produce copies of the Account Registration forms to determine any Payable on Death ("POD") beneficiary designations within seven (7) days. *Id.* ¶ 16. Plaintiff produced the documents in her possession or control, which did not include the Account Registration Forms. *Id.* ¶ 17.

Almost three months later, on January 22, 2020, Mark Singler ("Singler"), an agent and attorney for Midland, contacted Plaintiff's counsel to inform him that Midland located the October 2013 Chase Account Statements referencing both Accounts 3464 and 2885. *Id.* ¶ 18. He noted there was no reference to a POD Designation to the accounts and Midland did not have the Registration Form referencing the creation of a POD beneficiary. *Id.* The next day, on January 23, 2020, Plaintiff's counsel sent Singler two online screenshots of the relevant Chase accounts with a redacted POD beneficiary identification. *Id.* ¶ 19. Due to the redaction, another attorney from Singler's office, Michael Wurster, sent an email to defendant Krause notifying him that Wurster's office represents Midland, and they required Registration Forms, Beneficiary Forms/Designations and account statements for two accounts held in B.K Rao's name: 3464 & 2885. *Id.* ¶ 20. Wurster told Krause that

4

Midland needed to determine who the named beneficiary of the accounts were because his office had only received a redacted screenshot of the information, which he attached. *Id*. ¶ 21. Krause was out of office at the time, so Wurster contacted Chase employee Josie O'Neill ("O'Neill") for further assistance. *Id*. ¶ 22. Wurster provided O'Neill with the same information he provided Krause, coupled with additional documentation substantiating Midland's role and the court order. *Id*. ¶ 23. On February 27, 2020, O'Neill emailed Wurster stating she was still waiting to hear back, but that Singler would have to come in person with his identification because he was the one listed on the documents. *Id*. ¶ 24. Wurster responded to the email, copying Krause, thanking her for the update and informing her that "[all] we need to know is who the named beneficiaries on the account are." *Id*. ¶ 25.

On March 3, 2020, Krause met Singler in person at a Chase office. *Id*. ¶ 26. At the meeting, Krause "tendered to Singler two unredacted documents each titled 'Personal Signature Card' for accounts #3464 and #2885." *Id*. ¶ 27. Both signature cards were signed by Plaintiff on June 11, 2013, both on behalf of her mother B.K Rao with Plaintiff's Power of Attorney ("POA") designation, and in Plaintiff's own name with the POA designation. *Id*. ¶ 28. Both signature cards also reflected a POD designation for Plaintiff, which is noted at the top of each card and reads "POD Padma Rao". *Id*. ¶ 29. It is Krause's participation in this meeting that forms the basis of the defamation *per se* claim.

On March 16, 2020, Midland filed a "Report to the Court and Request for Direction" ("March 16 filing") in the Probate case regarding B.K Rao's estate. *Id*. ¶

5

33. Midland told the Probate Court in its filing that Plaintiff is the POD Beneficiary. *Id.* ¶ 34. The March 16 filing then made various allegations against Plaintiff, including that Plaintiff unlawfully used her POA authority to name herself as the sole beneficiary of her mother's Chase Accounts. *Id.* ¶ 35. The filing made no mention of Chase or Krause. *Id.* ¶ 36.

On April 15, 2020, Plaintiff's counsel sent a letter to Midland objecting to the March 16 filing and demanding that Midland withdraw the allegations it made about Plaintiff. *Id.* ¶ 37. The next day, Singler emailed Krause to inform him that the POD Beneficiary [Plaintiff] alleges that the POD Designation was established *before* 2013, not in 2013. *Id.* ¶ 38. Singler then asked Krause to "[p]lease request/obtain copies of the original 2009 Account Registration Forms for each checking/savings account." *Id.* ¶ 39. Upon receiving this request, Krause stated he "reviewed the 2009 signature cards for the Accounts, which did not establish that there was a POD or POA designation on the Accounts", and then provided copies of those signature cards to Singler as well. *Id.* ¶ 40. On April 17, 2020, Plaintiff's counsel emailed Singler stating "there is nothing in the Signature Card that shows the POD designation was first made <u>on that date</u> as you [Singler] have alleged, instead of preexisting." *Id.* ¶ 41 (underline in original).

Three days later, on April 20, 2020, Plaintiff's counsel emailed Singler about the signature cards again, alleging Singler made "false, cruel, defamatory allegations with no proof whatsoever that the POD Designation was made in June 2013, and no valid investigation to support [his] accusation." *Id.* ¶ 43. Plaintiff's counsel further

6

stated that Singler "based [his] accusations on a new Signature Card that gives the current status of the account, but provides no evidence that the POD designation was made on the date that the new Signature Card was signed." *Id.* ¶ 44. Plaintiff's counsel then stated "You [Singler] have also written that Chase officials told you they relied on the current status of the account as stated in the new Signature Card to determine that a POD designation had been established, **but no one at Chase told you that the Signature Card showed that the POD designation had been made <u>that same day</u> the new Signature Card was signed.**" *Id.* ¶ 45 (emphasis added) (underline in original).

Singler thus reached out to Krause a *third time* and asked for the titling of the accounts in 2012. *Id.* ¶ 46. Krause then reviewed the 2012 signature cards for the accounts which established that there was indeed both a POA and POD designation as of August 2, 2012, and provided copies of those signature cards to Singler. *Id.* The 2012 signature cards showed that Plaintiff *did not make herself* the POD beneficiary in June 2013 as Midland had alleged in the March 16 filing. *Id.* ¶ 47. Rather, B.K Rao signed and dated August 1, 2012, on the signature card for the 2885 Account. *Id.* Thus, *B.K. Rao* designated Plaintiff as the POD Beneficiary on or before August 1, 2012. [68] ¶¶ 9, 13-14.

On April 27, 2020, Plaintiff filed a motion for sanctions against Midland and Singler, alleging that Midland made various "false, defamatory and cruel statements" about Plaintiff using her POA to change the POD designation on the Chase accounts. [63] ¶ 49. The filing made no mention of Chase or Krause. *Id.* Plaintiff's sanction

7

motion alleged that the March 16 filing based its false accusations *solely* by reliance on two personal signature cards. *Id.* ¶ 50. On August 12, 2020, the probate court denied Plaintiff's sanction motion against Midland and Singler. *Id.* ¶ 53.

Plaintiff now alleges that Krause made a defamatory statement about her at two different meetings with Singler. *Id.* ¶ 54. Plaintiff believes that on March 3, 2020, Krause first "told Singler that the 2013 Signature Cards signed by Plaintiff were the documents establishing the POD designation on these accounts in favor of Plaintiff, and that Plaintiff used her POA authority to establish this POD personal benefit favor in her mother's account" in June 2013, which was "factually false". *Id.* ¶ 55. Plaintiff further claims the defamatory statement was made again at the subsequent meeting in April 2020. *Id.* ¶ 56. Plaintiff was not present at either of those meetings and was not a witness to what was said. *Id.* ¶ 59-60.

Krause stated under oath that "he never told Singler that Plaintiff used her POA authority to make herself POD Beneficiary on the Accounts", and in fact "recalls telling Singler at least once… that it was very unlikely that a POA was used to establish a POD designation on the Accounts." *Id.* ¶ 61-62. Krause also explained under oath that "when Singler first reached out to Chase regarding the Accounts in Spring 2020, Krause understood Singler to be requesting titling information for the Accounts, and after Krause's confirming that he was permitted to give… [requested] information to Singler, Krause reviewed the then current signature cards for the Accounts, which established that there was both a POA and POD designation on the Accounts as of June 11, 2013". *Id.* ¶ 30. Krause further stated under oath that "he

8

never told Singler that Plaintiff used her POA authority to make herself POD beneficiary on the Accounts." *Id.* ¶ 32.

Plaintiff brings her complaint under defamation *per se*, alleging that Defendants made an unprivileged publication and communication of a false statement that imputed the commission of several criminal offenses by Plaintiff against her mother to a third party (Midland) [1]. Defendants deny liability and move for summary judgment [62].

## ANALYSIS

Defendants move for summary judgment, arguing that: (1) Defendants did not make a defamatory statement, but (2) even if they did, it is protected by a qualified privilege [64]. The Court analyzes each set of claims in turn below.

### I. Defamation *Per Se*

Plaintiff first argues that "Krause repeatedly told Singler the false statement that Plaintiff had used her mother's POA agency in June 2013 to set up the POD designation in her favor using the June 2013 Signature Cards", defaming her. [67] at 10.

A defamatory statement is one that "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 726 (7th Cir. 2004) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 9, 607 N.E.2d 201, 206 (1992)). In Illinois, defamatory statements may be actionable *per se* or *per quod*. *Id.* There are four categories of statements considered

9

to be defamatory *per se*: "(1) words that impute the commission of a crime; (2) words that impute infection with a loathsome disease; (3) words that impute an inability to perform or a want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession, or business." *Id*.

"However, even if a statement falls into one of the categories of words that are defamatory *per se*, it will not be actionable *per se* if it is reasonably capable of an innocent construction." *Tuite v. Corbitt*, 224 Ill. 2d 490, 501–02, 866 N.E.2d 114, 121 (2006) (citing *Bryson v. News America Publications, Inc.*, 174 Ill.2d 77, 103 (1996))). The innocent construction rule applies only to *per se* actions. *Id*. at 509 (citing *Mittelman v. Witous*, 135 Ill.2d 220, 232 (1989)). Although the rule favors defendants, the stricter standard is "warranted because damages are presumed in *per se* actions." *Id*. "[T]he preliminary construction of an allegedly defamatory statement is a question of law; whether the statement was in fact defamatory is a question for the jury if the initial determination is resolved in the plaintiff's favor." *Id*. (citing *Chapski v. Copley Press*, 92 Ill.2d 344, 347 (1982)). If Plaintiff is unable to show by a preponderance of the evidence that Defendants made the false statement, then judgment must be entered in favor of Defendants because an essential element of her claim cannot be established. *See Fei Wang v. Bd. of Trustees of Univ. of Ill.*, 2020 WL 1503651, at *9 (N.D. Ill. Mar. 30, 2020).

Plaintiff argues that Krause's own affidavit shows that Krause made the statement to Singler. [67] at 10. The affidavit states, "[a]fter review of the 2013

10

Checking Account Signature Card and the 2013 Savings Account Signature Card Singler inquired further… [a]fter further review of all available information and documentation, it was my understanding and I confirmed to Singler that I believed the 2013 Checking Account Signature Card and 2013 Savings Account Signature Card were the documents **establishing** the POD Beneficiary Designations." [68-2] ¶ 11 (emphasis added). It next states, "[a]fter review of the 2009 Checking Account and Signature Card, Singler inquired further… [a]fter further review of all available information and documentation, it was my understanding… that I believed the 2013 Checking Account Signature Card and 2013 Savings Account Signature Card were the documents **establishing** the POD Beneficiary designations with the use of the Power of Attorney". *Id.* ¶ 15 (emphasis added). The parties dispute the meaning of "establishing" in Krause's affidavit.

Plaintiff argues to establish means to set up under the plain language of the term. [67] at 11-12. Defendants argue, and Krause stated under oath, that Krause's understanding was that "establishing" simply meant "there was a POD designation on the Accounts as of that date." [70] at 7. It is undisputed that Krause further clarified he "never told Singler that Plaintiff used her POA authority to make herself POD beneficiary on the Accounts." *Id.* Further, the record establishes that Plaintiff's counsel himself stated "**no one** at Chase told [Singler] that the Signature Card

11

showed that the POD designation had been made <u>that same day</u> the new Signature Card was signed." [63] ¶ 45 (emphasis added) (underline in original).

Here, the record supports that Krause did not understand "establishing" in his affidavit to mean "set up." Krause understood it to simply mean the designation was on the signature card as of that date. Plaintiff has offered no evidence to rebut Krause's testimony, besides her own speculative interpretation. It is well established that to show a genuine dispute as to a material fact, (here, Krause's understanding of "establishing"), the non-moving party must offer "particular materials in the record" and cannot rely upon speculation. *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2014) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.") (internal citation omitted). Further, "if a defendant's statements are reasonably capable of an innocent, nondefamatory construction, a plaintiff cannot maintain an action for defamation *per se*." *Giant Screen Sports v. Canadian Imperial Bank of Comm.*, 553 F.3d 527, 532 (7th Cir. 2009) (citing *Bryson*, 220 Ill.Dec.195); s*ee also Muzikowski v. Paramount Pictures*, 477 F.3d 899, 904 (7th Cir. 2007) ("If a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail."). That is the case here. Krause has offered an innocent construction, it thus prevails.

The cases Plaintiff cites do not require a different conclusion. *Tuite*, 224 Ill.2d 510, and *Giant Screen Sports*, 553 F.3d at 535, both involved an evaluation of whether an allegedly defamatory statement could be capable of innocent construction. Here, there is no evidence in the record that the statement was even made. It is undisputed

that Krause stated under oath he "never" told Singler that Plaintiff used her POA authority to make herself the POD beneficiary on the Accounts,[3] and in fact he stated under oath that he recalls telling Singler that it was "unlikely that a POA was used to establish a POD designation on the Accounts." [70] at 8. It is further undisputed that Krause understood "establishing" to mean the POD beneficiary was on the signature card. The same reasoning also applies to the other cases cited by Plaintiff,[4] making them distinguishable from this case.

As explained above, the Court finds that Plaintiff has not shown by a preponderance of the evidence that the alleged false and defamatory statements were made in the first instance. Alternatively, if made, they have an innocent construction. Plaintiff has therefore failed to prove an element of her claim.

## II. Qualified Privilege

Defendants next argue, even if Krause made the alleged defamatory statement, (which Plaintiff has not proven by a preponderance of the evidence he did, discussed above *supra*), any statement made by Krause to Singler was subject to a qualified privilege. [64] at 12-15. Plaintiff disputes that a qualified privilege applies, citing to her affidavit, which contains double hearsay and is thus inadmissible, relying on her complaint, which is similarly disregarded, and finally arguing that this

---

[3] Plaintiff's counsel confirmed as much in his email correspondence to Singler.

[4] *Toyo Tire Corp. v. Atturo Tire Corp.*, 2021 WL 463251 (N.D. Ill. Feb. 9, 2021); *F.A.Kikson v. Underwriters Lab'ys*, 2005 WL 736551, at *9 (N.D. Ill. 2005).

Court previously examined whether a triable fact issue existed, and concluded that it did.[5]

To state a defamation *per se* claim under Illinois law, a plaintiff must show (1) that the defendant made a false statement about the plaintiff, (2) an unprivileged publication of the statement to a third party, and (3) the statement falls within a category of statements that are considered defamatory *per se*, including "words that impute a person has committed a crime." *Solaia Tech, LLC v. Specialty Pub. Co.*, 304 Ill. Dec. 369 917 N.E.2d. 825, 839, (2006). "Even if a statement falls into a defamation *per se* category, it may not be actionable if the defendant can demonstrate that the statement is … subject to a privilege." *Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, 2022 WL 17338138, at *2 (N.D. Ill. Nov. 30, 2022) (citing *Solaia Tech., LLC*, 852 N.E.2d at 839). A qualified privilege is based on a policy of protecting honest communications of misinformation in certain favored circumstances to facilitate the availability of correct information. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill.2d 16, 24 (1993). The qualified privilege enhances "a defamation plaintiff's burden of proof." *Id*. "Once a defendant establishes a qualified privilege, a plaintiff must prove that the defendant either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness." *Id*. (citing *Mittelman*, 135 Ill.2d at 237). A defendant publishes with reckless

---

[5] Plaintiff's reliance on this Court's motion to dismiss ruling is misplaced. At the motion to dismiss stage, the Court simply evaluates whether Plaintiff's complaint contains allegations that are plausible. It does not weigh evidence. At summary judgment, the Plaintiff must come forward with evidence to support the allegations she made in her complaint. During discovery, Plaintiff was required to develop the record she needed to demonstrate a genuine dispute of material fact exists. She did not do so. *See* [61].

disregard when he publishes the statement "despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth." *Mittelman*, 135 Ill.2d at 237-38. In Illinois, the issue of whether a qualified privilege exists is a question of law. *Kuwik*, 156 Ill. 2d at 24. A conditional privilege exists as a matter of law where (1) the defendant made the statement in good faith; (2) the defendant had an interest or duty to uphold; (3) the statement was limited in scope; (4) a proper occasion; and (5) the publication was done in a proper manner and to proper parties only. *Id.* at 24-25.

Here, Plaintiff is unable to show that Krause made the alleged statement intentionally while knowing it was false, or while displaying a reckless disregard to the statement's falsity. Rather, the evidence supports that Krause did his due diligence and, at most, had a mistaken communication with counsel for Midland. Singler made narrow requests to Krause, asking about the 2013 signature cards, the 2009 signature cards, and finally, the 2012 signature cards. Krause looked at each signature card in turn and reported what each established. Only when Krause looked at the 2012 signature cards and saw B.K. Rao's signature did he discover that B.K. Rao designated Plaintiff as the sole POD beneficiary. Krause (1) gave Singler the information in good faith, (2) had a duty to Singler, Midland's representative, (3) limited the information to the pointed inquiry, (4) in person at the requested meeting, (5) to Singler only. There is thus an absence of evidence showing an abuse of the

qualified privilege. In sum, even if Plaintiff could prove that Singler made the alleged defamatory statement, it is protected by a qualified privilege and not actionable.

## CONCLUSION

For the reasons explained above, this Court grants Defendants' motion for summary judgment [62]. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff. Civil Case terminated.

E N T E R:

Dated: February 5, 2024

MARY M. ROWLAND
United States District Judge