**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DR. PADMA RAO,

Plaintiff,

v.

JPMORGAN CHASE BANK N.A.

Defendant.

Case No. 21-CV-1361

Judge Mary M. Rowland

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dr. Padma Rao ("Plaintiff") has sued Defendant JPMorgan Chase Bank, N.A. ("Chase") for defamation. After remand from the Seventh Circuit, Chase now moves for judgment on the pleadings [89], arguing that absolute litigation privilege bars Plaintiff's action.

For the reasons explained below, Chase's motion for judgment on the pleadings [89] is denied.

## I. Background

The factual background of this case is described in detail in this Court's April 24, 2026 opinion [94] and is incorporated herein by reference. The Court assumes familiarity with those facts.

On April 17, 2026, Chase, pursuant to Rule 12(c), moved for judgment on the pleadings based on the Illinois Appellate Court's decision in *American Backflow & Fire Prevention, Inc. v. Hincks,* 2025 IL App (2d) 250023, which issued during the pendency of this instant action. [89]. Chase contends that *American Backflow*

1

extended the doctrine of absolute litigation privilege such that Plaintiff's defamation claim now fails as a matter of law. *Id.*

## II.  Legal Standard

Under Rule 12(c), a party can move for judgment on the pleadings after the filing of the complaint and answer. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718 (7th Cir. 2002). Only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

The court may consider the complaint, the answer, and any written instruments attached as exhibits. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020). All well-pleaded allegations in the non-movant's pleadings must be taken as true, and all facts and reasonable inferences from those facts must be construed in the light most favorable to the non-movant. *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867 (7th Cir. 2021). As with a 12(b)(6) motion, a court may consider any facts of which the court will take judicial notice when ruling on a motion for judgment on the pleadings. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017).

## III.  Analysis

The defense of absolute litigation privilege rests upon the idea "that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even

at the expense of uncompensated harm to the plaintiff's reputation." *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740, 748 (2003) (citing W. Keeton, Prosser & Keeton on Torts, § 114, at 815 (5th ed.1984)). Various absolute privileges exist, including the familiar attorney litigation privilege. *Id*. at 164. "If the policy interest is of 'paramount importance, considerations of policy may require that the defendant's immunity for false statements be absolute, without regard to his purpose or motive, or the reasonableness of his conduct.'" *Id*. at 164. (citing W. Keeton, Prosser & Keeton on Torts, § 114, at 816 (5th ed.1984)).

Through the years, Illinois jurisprudence has developed and the doctrine of absolute litigation privilege has been extended to a variety of contexts. For instance, in the attorney litigation privilege setting, it has been extended to out-of-court communications between opposing counsel, out-of-court communications between attorney and client related to pending litigation, out-of-court communications between attorneys representing different parties suing the same entities, and out-of-court communications between an attorney and opposing parties in demand letters prior to litigation. *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 832, 861 N.E.2d 251, 255 (2006) (collecting cases). It has also been extended from simply protecting against defamation claims to other causes of action, including allegations of intentional infliction of emotional distress and invasion of privacy. *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 20, 117 N.E.3d 238, 247 (citations omitted). Illinois courts, however, have refused to extend the privilege to certain third parties lacking a connection to a litigation or between attorneys and other kinds of

third parties. *See Stein v. Krislov*, 2013 IL App (1st) 113806, ¶ 36, 999 N.E.2d 345, 356 (refusing to extend the privilege to an uninterested third-party who mailed a letter to a federal judge); *Thompson v. Frank,* 313 Ill.App.3d 661, 664, 730 N.E.2d 143, 146 (2000) (refusing to extend the privilege to out-of-court communications between an attorney and an opposing party's spouse).

Chase maintains that *American Backflow* represents yet another expansion of the absolute litigation privilege doctrine. Specifically, it asserts that in *American Backflow*, the Illinois Appellate Court extended the privilege to protect any third party who made allegedly defamatory statements so long as those statements pertain to a proposed or pending legal proceeding. [90] at 5–8; [97] at 3–4. Applying that concept here, Chase claims that the allegedly defamatory statements that Krause made to Singler are protected by the privilege because they were related to a pending probate proceeding in the Circuit Court of Cook County. [90] at 6–8.

The Court does not read *American Backflow* as broadly as Chase. *American Backflow*, rather, was simply an application of a longstanding principle in Illinois law that statements made by third parties directly to a quasi-judicial body during or preliminarily to a proceeding before that body, and having relation to that proceeding, are protected by the absolute litigation privilege. In *Lykowski v. Bergman,* for instance, the Illinois Appellate Court found that the defendant's statement to the Attorney Registration and Disciplinary Commission, a quasi-judicial body, regarding the plaintiff's alleged misconduct was absolutely privileged. 299 Ill. App. 3d 157, 165, 700 N.E.2d 1064, 1071 (1998). In *Kalish v. Illinois Education Ass'n,* the Illinois

4

Appellate Court similarly concluded that the Character and Fitness Committee of the Illinois Supreme Court was a quasi-judicial body and thus the defendant's statements to it regarding the plaintiff's reputation were privileged. 157 Ill.App.3d 969, 976, 510 N.E.2d 1103, 1108 (1987). And in *Parrillo, Weiss, & Moss v. Cashion,* the Illinois Appellate Court found that statements made to the Illinois Department of Insurance—another quasi-judicial body—regarding the plaintiff's relationship with an insurance company were protected by the litigation privilege. 181 Ill.App.3d 920, 928, 537 N.E.2d 851, 856 (1989). *See also Adco Servs., Inc. v. Bullard,* 256 Ill. App. 3d 655, 659, 628 N.E.2d 772, 774–775 (1993). *American Backflow* merely continued this trend. It involved allegedly defamatory statements made to the American Society of Sanitary Engineering ("ASSE") and the National Institute for Certification in Engineering Technologies ("NICET"), two quasi-judicial accreditation organizations, regarding the plaintiffs' qualifications for ASSE and NICET certifications. 2025 IL App (2d) 250023, ¶¶ 1, 31. As the statements were made in that context and "were necessary to initiate the quasi-judicial proceedings," the Illinois Appellate Court found the statements protected by the privilege. *Id.* ¶ 31.

Despite the parallels to prior Illinois cases, Chase tries to take *American Backflow* one step further, by relying on *American Backflow*'s comments regarding the "pertinency requirement" being met for its proposition that the *only* requirement now under Illinois law for the absolute litigation privilege to apply is that the communication must "pertain to proposed or pending legal proceedings." [97] at 3–4 (citing *American Backflow,* 2025 IL App (2d) 250023, ¶¶ 24, 25, 31). While pertinency

5

is significant, Chase's reliance on those statements divorced from the context in which they were made is a step too far. Pertinency is just one side of the absolute litigation privilege inquiry. Classification is equally important. The standards for these concepts differ. Pertinency asks whether the statement is "relevant, pertinent, or bear[s] some relation to the subject in controversy." *Bedin v. Nw. Mem'l Hosp.*, 2021 IL App (1st) 190723, ¶ 40, 187 N.E.3d 739, 749. This requirement is not strictly applied, and "all doubts are to be resolved in favor of finding the communication pertinent to the litigation." *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶ 19, 92 N.E.3d 607, 612. Classification, on the other hand, asks whether "there exists a significant interest in protecting the *type* of speech involved." *Defend v. Lascelles*, 149 Ill. App. 3d 630, 635, 500 N.E.2d 712, 716 (1986)) (emphasis added). In other words, was the defendant, in making her statement, "acting in furtherance of some interest of social importance, which is entitled to protection." *Edelman*, 338 Ill. App. 3d at 164; *see also Doe*, 2017 IL App (2d) 160860, ¶ 21 (agreeing that the "privilege does not apply … where the communication does not further some interest of social importance."). Unlike pertinency, the "*class* of communications to which [the privilege] applies is narrow." *Doe*, 2017 IL App (2d) 160860, ¶ 19 (emphasis added).

*Golden v. Mullen,* 295 Ill. App. 3d 865, 693 N.E.2d 385 (1997) illustrates the interplay between these ideas. *Golden* involved an allegedly defamatory statement made by an attorney to the wife of his former client. *Id*. at 867. Despite the statement being "pertinent" to the litigation that had concluded, the *Golden* court declined "to expand the privilege to cover communications made by an attorney to persons other

6

than the clients he or she represented," explaining that the "classification of absolutely privileged communications is necessarily narrow." *Id.* at 871–872.

By comparison, the type of communication at issue in *American Backflow*—from a third-party directly to a licensing agency—was of a kind that has long been recognized as furthering socially important interests. As explained by the Illinois Appellate Court in *Stein* when discussing *Lykowski, Kalish*, and *Parrillo*, these situations involve "regulatory bodies that [are] charged with the duty of investigating reports of improper activities and enforcing the rules of the particular agency." 2013 IL App (1st) 113806, ¶ 41. The litigation privilege therefore applies "because public policy encourages free communication of relevant information from the public to the agencies in order to ensure compliance with the rules of those agencies." *Id. American Backflow* acknowledges this when it noted that the purpose behind ASSE and NICET licensing certifications is "to ensure that those who hold themselves out as possessing professional qualifications to engage in service of fire sprinkler systems are qualified to render service." 2025 IL App (2d) 250023, ¶ 32 (cleaned up). Not affording absolute litigation privilege in this context, therefore, "would discourage concerned individuals from lodging complaints with the appropriate entities to protect this public interest." *Id.* ¶ 34[1]. As the statement at issue in *American Backflow* was made in this regulatory

---

[1] *American Backflow* also included a statement made to the Office of the Illinois State Farm Marshal ("Fire Marshal"). 2025 IL App (2d) 250023, ¶ 1. But similar to the ASSE and NICET, the Fire Marshal is "tasked with overseeing the licensing of fire sprinkler contractors," "may initiate proceedings to enjoin entities from improperly holding themselves as licensed," and "had ASSE and NICET not investigated defendants' claims, defendants planned to ask the Fire Marshal to use its authority to enjoin plaintiffs from their work." *Id.* ¶ 35.

7

setting, the only inquiry left was whether the statements were pertinent to the ASSE and NICET proceedings, a question the Illinois Appellate Court answered in the affirmative. *Id.* ¶ 31. *See also Portegys v. White*, 2023 IL App (3d) 220295-U, ¶ 27 ("*If the defamatory communication was made in the context in which the privilege applies,* [t]he only requirement is that the communication pertain to the proposed or pending litigation for immunity to attach.") (citation omitted) (emphasis added).

A similar thread can be found in *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, 36 N.E.3d 999 and *Scarpelli*, 2018 IL App (1st) 170874, other cases Chase relies upon.[2] *O'Callaghan* involved an intentional infliction of emotional distress suit against an attorney based on conduct undertaken for a defendant in an underlying lawsuit against the plaintiffs. 2015 IL App (1st) 142152, ¶ 1. Noting that absolute litigation privilege had been historically applied to defamation claims based on attorney's communications, the *O'Callaghan* court saw no reason against "applying the privilege outside of that context if Illinois policy would be furthered by doing so" and expanded the class of situations in which the privilege applied to include an *attorney's conduct* because "limiting the privilege to communications, as opposed to conduct, would undermine the policies behind the privilege." *Id.* ¶¶ 26, 27. Even so, the *O'Callaghan* court emphasized that "the conduct of attorneys will be limited by the pertinency requirement," but found the pertinency requirement met on the facts presented. *Id.* ¶¶ 29, 31. Similarly, *Scarpelli* involved an intrusion upon seclusion claim brought against a law firm based on the firm's prelitigation conduct. 2018 IL

---

[2]*American Backflow* also cites these cases.

App (1st) 170874, ¶¶ 9, 13. The *Scarpelli* court noted that in *O'Callaghan* "[it] not only extended the context of the applicable cause of action in which to apply the privilege, but [] also extended what is covered." *Id*. ¶ 25. Where the context is one which the privilege applies—such as where an attorney to an underlying action is the speaker—the *Scarpelli* court reiterated that the "only requirement for the application of the [] litigation privilege is that the communication must pertain to proposed or pending litigation." *Id*. ¶ 19. The *Scarpelli* court, like *O'Callaghan*, found that the pertinency requirement was met on the facts presented. *Id*. ¶ 27.

Fundamentally, Chase's reading of *American Backflow* seeks to read out the "classification" requirement and keep only "pertinency" as a prerequisite for the application of absolute litigation privilege. But given that the pertinency requirement "is not strictly applied," *Doe*, 2017 IL App (2d) 160860, ¶ 19, this would be a profound expansion of the privilege, drawing all types of communications—including the "pertinent" statements from *Golden*—into the ambit of its protection. The Court does not read *American Backflow* to make such a sweeping holding.

Chase bears the burden on this Rule 12(c) motion, and the Court is not convinced that *American Backflow* stands for the broad proposition that Chase claims it stands for. The "class of communications to which [absolute privilege] applies is narrow," *Doe*, 2017 IL App (2d) 160860, ¶ 19, and Chase has not identified any Illinois authority explicitly eliminating the classification requirement or extending the

9

absolute litigation privilege to any context similar to the one here[3]: to protect a third-party (Chase) based on statements its employee made to an attorney for an estate administrator (Singler). This Court will not be the first to do so. *See King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997) ("federal courts sitting in diversity ought to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state.").

## IV.    Conclusion

For the reasons explained, Chase's motion for judgment on the pleadings [89] is denied. Chase's motion to amend its affirmative defenses [92] is denied as moot.

E N T E R:

Dated: June 3, 2026

MARY M. ROWLAND
United States District Judge

---

[3] In the Court's view, the closest case cited by Chase is *Lewis v. Kalbhen*, 2025 IL App (1st) 242110, 277 N.E.3d 922 (Jan. 9, 2026), where the plaintiff sued a third-party investigator hired by an attorney for disclosing the plaintiff's private information to the attorney. *Id.* ¶ 1. The question was whether the investigator could claim absolute litigation privilege. *Id.* ¶ 25. The Illinois Appellate Court struggled to find an analogous situation, but ultimately concluded, based on federal and out-of-state authority, that the investigator was entitled to the "same absolute litigation privilege as that enjoyed by the attorney" as he acted as an agent of the attorney, explaining that extending the privilege in that context "is in accord with the principles underlying the privilege." *Id.* ¶ 32. Here, however, no such agency relationship has been alleged by Chase.